IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. MURRAY H. KIMMEL, | : CIVIL ACTION |
| Plaintiff, | : |
| v. | : |
| CAVALRY PORTFOLIO SERVICES, LLC | : NO. 10-680 |
| Defendant. | : |
| CAVALRY PORTFOLIO SERVICES, LLC | : |
| Counterclaim Plaintiff, | : |
| v. | : |
| DR. MURRAY H. KIMMEL | : |
| Counterclaim Defendant. | : |

**MEMORANDUM**

BUCKWALTER, S. J.                                                                           September 29, 2010

Currently pending before the Court are: (1) Plaintiff Dr. Murray H. Kimmel's ("Plaintiff") Motion to Dismiss Defendant Cavalry Portfolio Services, LLC's ("Defendant") Counterclaim pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), and (2) Defendant's Motion for Sanctions against Plaintiff's counsel pursuant to Federal Rule of Civil Procedure 11(b) and 28 U.S.C. § 1927. For the following reasons, both Motions are denied.

**I.     FACTUAL AND PROCEDURAL HISTORY**

Plaintiff is an adult individual who resides in Huntingdon Valley, Pennsylvania, and Defendant is a Delaware limited liability company with its principal place of business in Hawthorne, New York. (Compl. ¶¶ 5-8; Countercl. ¶¶ 5-6; Def.'s Mem. Opp'n Mot. Dismiss 4.) Plaintiff commenced this action for actual and statutory damages based on Defendant's alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq*. ("FDCPA"). (Compl. ¶ 4.) According to the Complaint, Defendant sent to Plaintiff correspondence dated December 8, 2009, in which Defendant offered Plaintiff an opportunity to settle an alleged Bank of America credit card debt of $12,479.32. (Id. ¶¶ 13-23.) Defendant asserts that it acquired the rights to the debt from Bank of America on October 2, 2009. (Countercl. ¶¶ 26-32). Plaintiff claimed that Defendant violated the FDCPA in attempting to collect on this debt by: (1) using false, deceptive, or misleading representations or means in connection with the collection of a debt, in violation of 15 U.S.C. §1692e; (2) using false representation or deceptive means to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692e(10); (3) acting in an otherwise unfair and unconscionable manner to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692f; and (4) failing to provide, within five days after its initial written communication with Plaintiff, written notice containing information on Plaintiff's right to dispute the debt, request validation, or request the name of the original creditor, in violation of 15 U.S.C. § 1692g(a). (Compl. ¶ 27.)

Defendant filed a Counterclaim alleging breach of contract and unjust enrichment based on Plaintiff's failure to pay $12,019.75 owed on the credit card account cited in the Complaint ("Account 0174"), as well as a separate debt of $85,809.89 from another credit card account that

was not referenced in the Complaint ("Account 09540"). (Countercl. ¶¶ 7-57.) Plaintiff filed the present Motion to Dismiss Defendant's Counterclaim on April 20, 2010. Defendant filed a Memorandum in Opposition to Plaintiff's Motion to Dismiss on May 7, 2010 and Plaintiff filed a Reply Brief on June 23, 2010.

Finally, Defendant filed a Motion for Sanctions on June 24, 2010, alleging that Plaintiff's counsel violated Federal Rule of Civil Procedure 11(b) and 28 U.S.C. § 1927 by filing the Motion to Dismiss Defendant's Counterclaim. (Def.'s Mot. Sanctions 1.) Plaintiff's Answer to the Motion for Sanctions was filed on July 7, 2010.

## II. DISCUSSION

Plaintiff sets forth nine arguments in favor of dismissing Defendant's Counterclaim, as follows: (1) Defendant failed to properly establish a clear chain of title for the contract upon which the Counterclaim is based; (2) the Court lacks subject matter jurisdiction over the Counterclaim; (3) the Counterclaim would "substantially predominate" over Plaintiff's FDCPA claim; (4) the Counterclaim is permissive; (5) exercising supplemental jurisdiction would have a chilling effect on FDCPA actions; (6) Defendant violated the Truth in Lending Act and Federal Reserve Board Regulations; (7) Defendant failed to attach a signed contract to its Counterclaim and attempted to circumvent the Pennsylvania Rules of Civil Procedure; (8) Defendant failed to establish a prima facie case for money owed on an account; and (9) the Counterclaim offends public policy.[1] (Pl.'s Mot. Dismiss ¶¶ 4-62.)

---

[1] Plaintiff casually mentions lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) as a basis for dismissal without providing any legal or factual support for this argument. The simple fact that Defendant willfully filed both its Answer to Plaintiff's Complaint and its Counterclaim in this Court indicates that Defendant has consented to personal jurisdiction. See In re Texas Eastern Transmission Corp. PCB Contamination Ins., 15 F.3d 1230,

The Court first considers the merits of these nine arguments. Upon finding no grounds to dismiss the Counterclaim, the Court next considers whether it is appropriate to sever Plaintiff's claim from Defendant's Counterclaim. Finally, the Court addresses Defendant's separate Motion for Sanctions based on the alleged frivolity of Plaintiff's Motion to Dismiss.

### A. Motion to Dismiss Defendant's Counterclaim

#### 1. Whether Defendant Failed to Properly Establish a Clear Chain of Title for the Contract upon Which the Counterclaim is Based (Plaintiff's First Argument)

Plaintiff withdrew this argument in his Reply Brief. (Pl.'s Reply Br. 8.)

#### 2. Whether the Court has Subject Matter Jurisdiction Over Defendant's Counterclaim (Plaintiff's Second Argument)

Rule 13 establishes two kinds of counterclaims: compulsory and permissive. FED. R. CIV. P. 13. A counterclaim is compulsory if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." FED. R. CIV. P. 13(a)(1)(A). A compulsory counterclaim does not require an independent jurisdictional basis to be brought in federal court, even when it is purely a state-law claim. Ambromovage v. United Mine Workers of Am., 726 F.2d 972, 988 (3d Cir. 1984) (citations omitted). A permissive counterclaim, on the other hand, requires a basis of federal jurisdiction independent of the opposing party's claim. Alden's Inc. v.

---

1236 (3d Cir. 1994) ("a party is deemed to have consented to personal jurisdiction if the party actually litigates the underlying merits or demonstrates a willingness to engage in extensive litigation in the forum.") (citations omitted).

Packel, 524 F.2d 38, 52 (3d Cir. 1975).[2] A permissive counterclaim is broadly defined to include "any claim that is not compulsory." FED. R. CIV. P. 13(b).

Here, Plaintiff's cause of action arises under the FDCPA, a federal statute. The Court therefore has federal question jurisdiction to hear this claim pursuant to 28 U.S.C. § 1331.[3] Defendant's Counterclaim for breach of contract and unjust enrichment, on the other hand, arises under state law. In prior cases where a plaintiff has brought a claim under the FDCPA, courts have held that a defendant's state-law counterclaim for the underlying debt is permissive rather than compulsory. For instance, in Orloff v. Syndicated Office Sys., Inc., No. CIV.A.005355, 2003 WL 22100868, at *2-3 (E.D. Pa. Aug. 20, 2003), the court found that the defendants' counterclaim was not compulsory because "the issues of fact and law raised by Plaintiff's claims under the FDCPA . . . are completely different than those raised by Defendants' claim for breach of contract. Plaintiff's claims involve issues of statutory compliance. Defendants' counterclaim is simply a state law debt collection claim." Id. at *2; see also Ayres v. Nat'l Credit Mgmt. Corp., No. CIV.A.90-5535, 1991 WL 66845, at *2 (E.D. Pa. Apr. 25, 1991) (noting that "[a]t least three federal courts have held that debt-collection actions do not arise out of the same 'transaction or occurrence', within the meaning of Rule 13(a), as actions under the FDCPA").

---

[2] The jurisdictional basis for hearing a permissive counterclaim may be original or supplemental jurisdiction. See Alpern v. Cavarocchi, No. CIV.A.98-3105, 1999 WL 257695, at *11 (E.D. Pa. Apr. 28, 1999) ("While a compulsory state law counterclaim is undoubtedly within the Court's supplemental (i.e., ancillary) jurisdiction, it does not necessarily follow that a 'permissive' state law counterclaim is outside the Court's jurisdiction." Rather, "[t]he question with regard to supplemental jurisdiction is whether the state law counterclaim claim shares a 'common nucleus of operative fact' with the underlying federal claim.")

[3] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

This Court concurs with these decisions and finds that Defendant's Counterclaim for breach of contract and unjust enrichment does not arise out of the same transaction or occurrence as Plaintiff's claim under the FDCPA. Plaintiff's claim involves factual and legal questions as to whether Defendant used improper means to collect an alleged debt, while Defendant's Counterclaim raises separate issues regarding whether and to what extent a debt existed at all. Furthermore, Plaintiff's claim alleges that Defendant violated the FDCPA while trying to collect the debt associated with Account 0175. Defendant's Counterclaim, however, seeks damages not only for Account 0175, but for Account 09540, which is unrelated to Plaintiff's claim. Therefore, Defendant's Counterclaim is permissive rather than compulsory.

Because Defendant's state-law Counterclaim is permissive, this Court must have an independent basis for jurisdiction in order to hear it. Defendant argues that federal jurisdiction exists based on diversity of citizenship pursuant to 28 U.S.C. § 1332,[4] and the Court agrees. The parties do not dispute the fact that Defendant is a Delaware limited liability company with its principal place of business in Hawthorne, New York, while Plaintiff is a resident of Huntingdon Valley, Pennsylvania. Defendant seeks to recover outstanding debts associated with two credit cards. Defendant asserts that $12,019.75 is due on Account 0175 and that $85,809.89 is due on Account 09540. The amount in controversy therefore totals $97,829.64. Because the parties are citizens of different states and the amount in controversy exceeds $75,000, the Court finds

---

[4] 28 U.S.C. § 1332 states in relevant part: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1).

pursuant to 28 U.S.C. § 1332 that it has an independent basis of subject matter jurisdiction over Defendant's Counterclaim.

### 3. Whether the Counterclaim "Substantially Predominates" Over Plaintiff's FDCPA Claim; Whether the Counterclaim Should be Dismissed Because it is Permissive; and Whether Exercising Supplemental Jurisdiction Over the Counterclaim Would Have a Chilling Effect on Future FDCPA Actions (Plaintiff's Third, Fourth, and Fifth Arguments)

Plaintiff's third, fourth, and fifth arguments pertain to the issue of supplemental jurisdiction.[5] Supplemental jurisdiction is governed by 28 U.S.C. § 1367, which states in relevant part: "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). This language makes clear that exercising supplemental jurisdiction is only appropriate when original jurisdiction does not exist. Having found that the Court has original jurisdiction over Defendant's Counterclaim in this case, it is not necessary to consider the issue of supplemental jurisdiction.

---

[5] Plaintiff's third argument invokes 28 U.S.C. § 1367(c)(2), which allows a district court to decline to exercise supplemental jurisdiction when "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." Plaintiff's fourth argument is based on a case in which the court lacked original jurisdiction over a permissive counterclaim, and declined to exercise supplemental jurisdiction. See Orloff, 2003 WL 22100868, at *2-3. Plaintiff's fifth argument claims that exercising supplemental jurisdiction would have a chilling effect on FDCPA actions.

Plaintiff raised another supplemental jurisdiction issue in his Reply Brief, arguing that jurisdiction should not be exercised in this case because his claim and Defendant's Counterclaim do not arise from "a common nucleus of operative fact." (Reply Br. 2-6.) The "common nucleus of operative fact" analysis is appropriate in determining whether to exercise supplemental jurisdiction. See De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 307-08 (3d Cir. 2003).

### 4. Whether Defendant Violated the Truth in Lending Act or Federal Reserve Board Regulations (Plaintiff's Sixth Argument)

Plaintiff argues that Defendant violated the Truth in Lending Act, 28 U.S.C. §§ 1601, *et seq*. and 12 C.F.R. § 226.5a(a)(2) by failing to include in its Counterclaim certain information about interest rates and fees. Even if this allegation is true, it does not provide a basis for dismissing the Counterclaim, and so the Court will not address the merits of this argument.

### 5. Whether Defendant Failed to Attach a Signed Contract to its Counterclaim and Attempted to Circumvent the Pennsylvania Rules of Civil Procedure (Plaintiff's Seventh Argument)

In his Reply Brief, Plaintiff withdrew his argument that Defendant was required to attach a signed contract to the Counterclaim. (Pl.'s Reply Br. 8.) Plaintiff's seventh argument also states that Defendant's Counterclaim should be dismissed because it is an attempt to circumvent the Pennsylvania Rules of Civil Procedure. Because Defendant properly filed the Counterclaim in federal court, it is not necessary to consider the reasons why it chose to file here instead of Pennsylvania state court.

### 6. Whether Defendant Failed to Establish a Prima Facie Case for Money Owed on an Account (Plaintiff's Eighth Argument)

Plaintiff next contends that Defendant's Counterclaim should be dismissed because Defendant failed to establish a prima facie case for money owed on an account. Plaintiff cites no federal authority in support of this argument, but appears to allege that Defendant has insufficiently pleaded its Counterclaim. At this stage of the litigation, however, Defendant "is not required to establish the elements of a *prima facie* case but instead, need only put forth

allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009) (citations omitted). The Counterclaim makes clear that Defendant is seeking $12,019.75 owed in connection with Account 0174 and $85,809.89 owed in connection with Account 09540; copies of credit card statements for both of these accounts were attached to the Counterclaim. (Countercl. Ex. A; Id. Ex. D.) As such, the Court finds that Defendant has satisfied its burden of providing "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

### 7. Whether the Court Should Decline to Exercise Diversity Jurisdiction for Reasons of Public Policy (Plaintiff's Ninth Argument)

Plaintiff argues that even if diversity jurisdiction exists, the Court may decline to exercise such jurisdiction for reasons of public policy. (Pl.'s Reply Br. 7.) Plaintiff cites two cases, Meredith v. City of Winter Haven, 320 U.S. 228, 234 (1943) and Maryland Cas. Co. v. Glassell-Taylor & Robinson, 156 F.2d 519, 524 (5th Cir. 1946) in support of this claim. However, it is clear from both of these opinions that a federal court should only decline to exercise the jurisdiction conferred upon it when a case concerns an important public policy of a *state*, not the federal government.[6]

---

[6] Meredith held that a federal court may decline to exercise its jurisdiction in order to avoid interference "with state criminal prosecutions . . . or with the collection of state taxes or with the fiscal affairs of the state . . . or with the state administrative function of prescribing the local rates of public utilities . . . or . . . with the liquidation of an insolvent state bank by a state administrative officer . . . ." Meredith, 320 U.S. at 235 (citations omitted). In Maryland Cas. Co., the court held that "[i]n such cases where jurisdiction clearly appears, Federal District Courts do not have the right to decline to exercise that jurisdiction in litigation involving no important question of the public policy of the State." Maryland Cas. Co., 156 F.2d at 524.

Here, Plaintiff contends that the Court should decline to exercise its jurisdiction over Defendant's Counterclaim because the FDCPA was enacted to protect consumers from unscrupulous debt collectors, regardless of whether a debt was owed. As a result, Plaintiff claims, it would be unfair to consumers in an FDCPA action to have to litigate the issue of the underlying debt's validity. (Pl.'s Reply Br. 7.) Plaintiff's public policy argument therefore pertains only to the FDCPA, a federal statute. While this argument may be a legitimate consideration in determining whether to separate Plaintiff and Defendant's claims – an issue that is discussed below – no important matters of state policy are implicated in this matter. As such, the Court finds that exercising the diversity jurisdiction conferred upon it is appropriate in this case.

### B. Separation of Claims

Even though the Court has original jurisdiction over Defendant's Counterclaim, it still has the discretion to hear the Counterclaim and Plaintiff's claim as separate matters. Federal Rule of Civil Procedure 21 allows a court to "sever any claim against a party." FED. R. CIV. P. 21. Federal Rule of Civil Procedure 42(b) states that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." FED. R. CIV. P. 42(b). Though Plaintiff does not rely on either of these rules in his Motion, he does argue that separate trials are necessary for public policy reasons. (Pl.'s Reply Br. 4-5.) The Court will address those arguments in the context of Rule 21 and Rule 42(b).

#### 1. **Standard of Review for Rule 21 and Rule 42(b)**

District courts are given broad discretion when deciding whether to sever a case pursuant to Rule 21 or Rule 42(b). BancMortgage Fin. Corp. v. Guarantee Title & Trust Co., No. CIV.A.99-CV-2932, 2000 WL 1521600, at *1 (E.D. Pa. Oct. 6, 2000) (citing Brunet v. United Gas Pipeline Co., 15 F.3d 500, 505 (5th Cir.1994); Idzojtic v. Pa. R.R. Co., 456 F.2d 1228, 1230 (3d Cir. 1972)). When claims are severed pursuant to Rule 21, "'they become entirely independent actions to be tried, and judgment rendered thereon, independently.'" Id. at *2 (quoting Rodin Properties-Shore Mall, N.V. v. Cushman & Wakefield of Pa., Inc., 49 F. Supp. 2d 709, 720 (D.N.J. 1999)). Separate trials ordered pursuant to Rule 42(b), on the other hand, will result in a single judgment. Id. Regardless of whether the court is making a determination to sever claims pursuant to Rule 21 or to order separate trials pursuant to Rule 42(b), the issues it considers are largely the same, "namely, convenience of the parties, avoiding prejudice, and promoting expedition and economy." Id. (citing Sutton Hill Assocs. v. Landes, No. CIV.A.87-8452, 1988 WL 56710, at *2 (S.D.N.Y. 1988)).[7]

### 2. Whether Plaintiff's Claim and Defendant's Counterclaim Should be Heard as Separate Matters

In this case, the facts warrant against severing the claims or ordering separate trials. First, since there are only two parties to this litigation, it would be more convenient for both to litigate

---

[7] This analysis includes the following considerations:

(1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted, and (4) whether the party requesting the severance will be prejudiced if it is not granted.

Id. (quoting Official Comm. of Unsecured Creditors v. Shapiro, 190 F.R.D. 352, 355 (E.D. Pa. 2000)).

all of their claims against each other in a single action. Though there are inherent differences between Plaintiff's FDCPA claim and Defendant's Counterclaim for breach of contract and unjust enrichment, the Federal Rules of Civil Procedure specifically state that a counterclaim "may request relief that exceeds in amount or differs in kind from the relief sought by the opposing party." FED. R. CIV. P. 13(c). Therefore, the mere presence of different factual or legal questions is not enough to support severing the case. In addition, the relief sought by Plaintiff and Defendant concern similar subject matter: credit card debt allegedly owed by Plaintiff to Defendant, and Defendant's attempt to collect on that debt. As a result, there is a likelihood that many issues – such as the existence and nature of a debt,[8] whether one or more of Plaintiff's accounts with Bank of America were assigned to Defendant, and when and how Defendant attempted to collect on any debt – will be relevant to both Plaintiff's claim and Defendant's Counterclaim. Considering both in the same action could help eliminate duplicative discovery.

As to the issue of prejudice, Plaintiff cites Leatherwood v. Universal Bus. Serv. Co., 115 F.R.D. 48, 50 (W.D.N.Y. 1987), in support of his public policy argument that allowing debt collectors to sue for the underlying debt would deter litigants from pursuing their rights under the FDCPA. The Leatherwood court found that

---

[8] The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Therefore, at least with respect to Account 0175, details regarding how Plaintiff allegedly incurred debt will be important to both parties. In order to sustain an FDCPA claim, Plaintiff must show that the debt Defendant attempted to collect pertained to expenditures made for "personal, family, or household purposes." Defendant must also provide details of the expenditures made by Plaintiff in order to sustain a breach of contract or unjust enrichment claim.

> to allow a debt collector defendant to seek to collect the debt in the federal action to enforce the FDCPA might well have a chilling effect on persons who otherwise might and should bring suits such as this. Moreover, it would involve this Court in questions of no federal significance. Given the remedial nature of the FDCPA "and the broad public policy which its serves, federal courts should be loath to become immersed in the debt collections suits of . . . the target of the very legislation under which" a FDCPA plaintiff states a cause of action.

Id. (quoting Roberts v. Nat'l Sch. of Radio & Television Broadcasting, 374 F.Supp. 1266, 1271 (N.D. Ga. 1974)).

The Court, however, declines to apply the reasoning of the Leatherwood court to the instant case for two reasons. First, the Court does not find that hearing Defendant's Counterclaim in this action would have any "chilling effect" on those who might bring FDCPA claims in the future. In creating a federal cause of action for consumers who are subjected to improper debt-collection practices, the FDCPA did not eliminate a debt collector's ability to bring a lawsuit to recover a disputed debt. See Crawford v. Equifax Payment Serv., Inc., No. CIV.A.97 C 4240, 1998 WL 704050, at *7 (N.D. Ill. Sept. 30, 1998) (noting that a debtor in an FDCPA action is not allowed "to shirk his alleged debt"). Therefore, Plaintiff would still have to litigate Defendant's breach of contract and unjust enrichment claims even if the Court severed the case. As such, it is unlikely that a decision to hear those claims in the same action as Plaintiff's claim (instead of a later, separate action) would deter consumers from seeking relief under the FDCPA.

Second, and more important, the Leatherwood court found that hearing the debt collector's claim in the federal action "would involve this Court in questions of no federal significance." Leatherwood, 115 F.R.D. at 50. In that case, there were no questions of federal

significance because the court lacked original jurisdiction over the defendant's counterclaim. Id. at 49. Therefore, when the Leatherwood court declined to exercise jurisdiction, it could do so with the knowledge that the counterclaim would not return to federal court. The court could focus solely on the FDCPA claim and resolve that issue as quickly and efficiently as possible.[9] Here, however, the Court does have original jurisdiction over Defendant's Counterclaim, and cannot merely dismiss it by refusing to exercise supplemental jurisdiction. As a result, the Court will have to address Defendant's breach of contract and unjust enrichment claims either in this action or a later separate action.[10] Because hearing the claims together in one action will help eliminate the unnecessary duplication of filing fees, discovery requests, and court documents, the Court declines to exercise its discretion pursuant to Rule 21 to sever the claims or order separate trials pursuant to Rule 42(b).

    **C.    Motion for Sanctions**

Defendant moves for sanctions pursuant to Federal Rule of Civil Procedure 11(b) and 28 U.S.C. § 1927, alleging that Plaintiff's counsel failed to conduct a reasonable inquiry into applicable law before filing the Motion to Dismiss Defendant's Counterclaim, and that the Motion's only purpose was to harass Defendant and delay the litigation. (Def.'s Mot. for Sanctions 5.) The Court finds no merit to this Motion.

---

[9] This was also true of two other cases cited by Plaintiff, Orloff v. Syndicated Office Sys., Inc., No. CIV.A.005355, 2003 WL 22100868, (E.D. Pa. Aug. 20, 2003), and Ayres v. Nat'l Credit Mgmt. Corp., No. CIV.A90-5535, 1991 WL 66845, (E.D. Pa. Apr. 25, 1991). In both of those cases, the defendants were unable to establish an independent basis for jurisdiction, and the courts declined to hear their counterclaims in the same action as the plaintiffs' FDCPA claims. Orloff, 2003 WL 22100868, at *1-3; Ayres, 1991 WL 66845, at *1-4.

[10] Defendant has specifically stated that it will likely re-file its claims in federal court if Plaintiff's Motion to Dismiss is granted. (Def.'s Mem. Opp'n Mot. Dismiss 3.)

"Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.'" Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990). "An attorney who signs the paper without such a substantiated belief 'shall' be penalized by 'an appropriate sanction.'" Id. In other words, Rule 11 "requires that a court impose sanctions when a litigant or attorney makes submissions to the court which are frivolous and intended for improper purposes." Bocelli v. Indian Ridge Provisions, Inc., No. CIV.A.07-3707, 2008 WL 863971, at *3 (E.D. Pa. Mar. 27, 2008).

In order to recover attorneys' fees under 28 U.S.C. § 1927, on the other hand, a party must prove that the offending counsel has: "(1) multiplied proceedings; (2) unreasonably and vexatiously; (3) thereby increasing the cost of the proceedings; (4) with bad faith or with intentional misconduct." LaSalle Nat'l Bank v. First Conn. Holding Group, LLC, 287 F.3d 279, 288 (3d Cir. 2002). This § 1927 sanctioning power should only be exercised "in instances of a serious and studied disregard for the orderly process of justice." Ford v. Temple Hosp., 790 F.2d 342, 347 (3d Cir. 1986) (quotations omitted). Courts must be wary not to discourage attorneys from exercising their ethical obligation to zealously represent their clients. Baker Indus., Inc. v. Cerberus, Ltd., 764 F.2d 204, 208 (3d Cir. 1985); see also LaSalle Nat. Bank, 287 F.3d at 289 ("sanctions may not be imposed under § 1927 absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal.").

Here, there is insufficient evidence to suggest that Plaintiff's Motion to Dismiss Defendant's Counterclaim was filed for an improper purpose or that it unreasonably and vexatiously multiplied these proceedings. While Plaintiff's counsel may not have articulated

15

their request for relief clearly and may have mischaracterized the primary issue as jurisdictional, their Motion raised a legitimate legal question, namely, whether Plaintiff's claim and Defendant's Counterclaim should be heard in the same action. Furthermore, there is no indication that Plaintiff's counsel had any intent to harass Defendant by filing the Motion. In fact, when Defendant challenged Plaintiff's initial assertion that Defendant was required to provide certain documents at the pleading stage, Plaintiff's counsel agreed and withdrew those claims in the Reply Brief. This good faith gesture suggests to the Court that even if Plaintiff's counsel misunderstood the relevant law, their intent in filing their Motion was not to annoy Defendant but to zealously advocate on behalf of their client. Therefore, sanctions are not warranted under either Rule 11 or 28 U.S.C. §1927.

### III.　CONCLUSION

For all of the foregoing reasons, the Court finds: (1) that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 over Defendant's permissive Counterclaim; (2) that severing the claims pursuant to Federal Rule of Procedure 21 or ordering separate trials pursuant to Federal Rule of Procedure 42(b) would be inefficient and inconvenient; and (3) that there are insufficient grounds to sanction Plaintiff's counsel for filing the Motion to Dismiss Defendant's Counterclaim. As such, Plaintiff's Motion to Dismiss Defendant's Counterclaim and Defendant's Motion for Sanctions will be denied in their entirety.