**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DR. MURRAY H. KIMMEL, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CAVALRY PORTFOLIO SERVICES, LLC | : | NO.  10-680 |
| | : | |
| Defendant. | : | |
| | : | |
| CAVALRY PORTFOLIO SERVICES, LLC | : | |
| | : | |
| Counterclaim Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DR. MURRAY H. KIMMEL | : | |
| | : | |
| Counterclaim Defendant. | : | |

**<u>MEMORANDUM</u>**

BUCKWALTER, S. J.                                                May 25, 2011


Currently pending before the Court are: (1) Defendant Cavalry Portfolio Services, LLC's

("Defendant") Motion for Summary Judgment as to All Claims by Plaintiff Dr. Murray H.

Kimmel ("Plaintiff") and (2) Defendant's Motion for Summary Judgment on All Counterclaims

against Plaintiff.  For the following reasons, Defendant's Motion for Summary Judgment as to

Plaintiff's Claims is granted and Motion for Summary Judgment as to All Counterclaims is

partially granted and partially denied as moot.

## I.      FACTUAL AND PROCEDURAL HISTORY

This matter stems from Plaintiff's action against Defendant, which alleges violations of

the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq*. ("FDCPA").  (Compl. ¶ 4.)

According to the Complaint, Defendant sent to Plaintiff correspondence dated December 8, 2009, in which Defendant offered Plaintiff an opportunity to settle an alleged Bank of America credit card debt of $12,479.32.  (Id. ¶ 15.)  Plaintiff claims that Defendant violated the FDCPA in attempting to collect on this debt by:  (1) using false, deceptive, or misleading representations or means in connection with the collection of a debt, in violation of 15 U.S.C. §1692e; (2) using false representation or deceptive means to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692e(10); (3) acting in an otherwise unfair and unconscionable manner to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692f; and (4) failing to provide, within five days after its initial written communication with Plaintiff, written notice containing information on Plaintiff's right to dispute the debt, request validation, or request the name of the original creditor, in violation of 15 U.S.C. § 1692g(a).  (Compl. ¶ 27.)

Defendant filed counterclaims for breach of contract and unjust enrichment based on Plaintiff's failure to pay $12,019.75 owed on the credit card account cited in the Complaint ("Account 0174"), as well as a separate debt of $85,809.89 from another credit card account that was not referenced in the Complaint ("Account 09540").  (Def.'s Am. Countercl. ¶¶ 7-57.) Defendant contends that Plaintiff opened these accounts with Bank of America, that the accounts were purchased by Cavalry SPV I, LLC on September 29, 2009, and that Defendant acquired the rights to the accounts from Cavalry SPV I, LLC on October 2, 2009.  (Def.'s Mot. Summ J. Countercl. 2-4.)  Plaintiff filed a Motion to Dismiss Defendant's Counterclaim on April 20, 2010, which this Court denied on September 29, 2010.  See Kimmel v. Cavalry, 747 F. Supp. 2d 427 (E.D. Pa. 2010).  Defendant filed two separate Motions for Summary Judgment on September 13, 2010, which this Court denied without prejudice after the parties stipulated to an

extension of the discovery deadline on October 5, 2010.  On February 7, 2011, Defendant again

filed Motions for Summary Judgment on Plaintiff's claims and its own counterclaims.  Plaintiff

filed Responses in Opposition to Defendant's Motion for Summary Judgment on Plaintiff's

Claims on February 28, 2011 and to Defendant's Motion for Summary Judgment on All

Counterclaims on March 1, 2011.  Defendant filed Reply Briefs on April 13, 2011,[1] and Plaintiff

filed Sur Replies to both Motions on April 29, 2011.

## II.    STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.

56(a).  A factual dispute is "material" only if it might affect the outcome of the case.  Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-

finder must be able to return a verdict in favor of the non-moving party.  Id.

On summary judgment, it is not the court's role to weigh the disputed evidence and

decide which is more probative, or to make credibility determinations.  Boyle v. County of

Allegheny, Pa., 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermarkets, Inc. v.

Darling-Delaware Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)).  Rather, the court must

consider the evidence, and all reasonable inferences which may be drawn from it, in the light

most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 587-88 (1986) (citing U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v.

Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).  If a conflict arises between the evidence

---

[1]  The Reply to Plaintiff's Response in Opposition to the Motion for Summary Judgment on All Counterclaims was amended on April 13, 2011 to include signed affidavits from Debra L. Pellicciaro.

presented by both sides, the court must accept as true the allegations of the non-moving party,

and "all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, 477 U.S. at 255.

Although the moving party bears the initial burden of showing an absence of a genuine

issue of material fact, it need not "support its motion with affidavits or other similar materials

negating the opponent's claim." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  It can meet

its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving

party's case." <u>Id.</u> at 325.  Once the movant has carried its initial burden, the opposing party

"must do more than simply show that there is some metaphysical doubt as to material facts."

<u>Matsushita Elec.</u>, 475 U.S. at 586.  "[T]here is no issue for trial unless there is sufficient

evidence favoring the nonmoving party for a jury to return a verdict for that party." <u>Anderson</u>,

477 U.S. at 249.  Summary judgment may be granted when "the evidence is merely colorable . . .

or is not significantly probative." <u>Id.</u> at 249-50 (citations omitted).

## III.   DISCUSSION

Defendant has filed two separate Motions for Summary Judgment.  The first seeks

judgment in its favor as to all of Plaintiff's FDCPA claims; the second seeks judgment on its

counterclaims for breach of contract and unjust enrichment.  The Court considers each Motion

separately.

### A.   Defendant's Motion for Summary Judgment on Plaintiff's Claims

The FDCPA was enacted "'to protect consumers from a host of unfair, harassing, and

deceptive collection practices without imposing unnecessary restrictions on ethical debt

collectors.'" <u>FTC v. Check Investors, Inc.</u>, 502 F.3d 159, 165 (3d Cir. 2007) (quoting <u>Staub v.</u>

<u>Harris</u>, 626 F.2d 275, 276-77 (3d Cir. 1980) (internal quotations omitted)).  Under the FDCPA,

"debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  15 U.S.C. § 1692a(5).

Defendant initially moved for summary judgment by challenging the merits of each individual claim made by Plaintiff under the FDCPA.  (See Def.'s Mot. Summ. J. Pl.'s Claims 6-14.)  In its Reply Brief, however, Defendant raises the separate argument that Plaintiff cannot pursue those individual claims because he has not established that the money allegedly owed in this case qualifies as a "debt" for purposes of the FDCPA.  (Def.'s Reply Pl.'s Resp. Opp'n Mot. Summ. J. Pl.'s Claims ("Def.'s Reply Pl.'s Claims") 2-5.)  While a Reply Brief is typically not the proper forum in which to raise new legal arguments,[2] the Court considers Defendant's argument because it concerns an essential element of Plaintiff's cause of action and would likely be raised again later in the litigation.  Furthermore, Plaintiff was given an opportunity to respond to this argument by way of the Court's Amended Order of April 13, 2011.

According to Defendant, Plaintiff testified that he suffers from dementia and does not recall the nature of the debt at issue in this case, and has not engaged in any discovery to establish that it is a consumer debt.  (Id. at 3.)  Because there is no evidence that the debt derived from a transaction that was primarily for personal, family, or household purposes, Defendant

---

[2]  See, e.g., U.S. v. Martin, 454 F. Supp. 2d 278, 281 n.3 (E.D. Pa. 2006) ("A reply brief is intended only to provide an opportunity to respond to the arguments raised in the response brief; it is not intended as a forum to raise new issues."); Sproull v. Golden Gate Nat'l Senior Care, LLC, No. CIV.A.08-1107, 2010 WL 339858, at *3 (W.D. Pa. Jan. 22, 2010) ("[T]he reply brief generally cannot be used to expand the issues presented for adjudication beyond those raised in the moving papers.").  There is, however, no rule that categorically prohibits a court from considering an argument raised for the first time in a Reply Brief.

argues that Plaintiff has failed to satisfy an essential element of his FDCPA claim.  (Id. at 3-4.)

In response, Plaintiff contends that the money he allegedly owes is a "debt" for purposes of the

FDCPA because the credit card agreement for the account at issue restricts the use of the card to

personal use only, and because Defendant attempted to collect the money from him personally.

(Pl.'s Sur Reply Def.'s Mot. Summ. J. Pl.'s Claims 2.)

       In support of this argument, Plaintiff cites to three cases.  (Id. at 2-3.)  First, in Slenk v.

Transworld Sys., Inc., 236 F.3d 1072 (9th Cir. 2001), the Ninth Circuit held that in determining

whether a loan is consumer or commercial in nature, courts should "'look to the substance of the

transaction and the borrower's purpose in obtaining the loan, rather than the form alone.'"  Id. at

1075 (quoting Riviere, et al. v. Banner Chevrolet, Inc., 184 F.3d 457, 462 (5th Cir. 1999)).  The

Court is unable to discern how the Slenk opinion helps Plaintiff's argument, however, since

neither party in this case has introduced evidence concerning the substance of the transactions or

Plaintiff's purpose in obtaining the credit card.  If Plaintiff is suggesting that the restrictions

contained in the credit card agreement are evidence of his purpose – rather than the lender's

purpose – the Court is unpersuaded.  The credit card agreement was introduced by Defendant in

support of its counterclaim for breach of contract, and Plaintiff has consistently maintained the

position that this document has not been properly authenticated.  (See Pl.'s Resp. Opp'n Def.

Mot. Summ J. Countercl. 5, 10, 11; Pl.'s Sur Reply Def.'s Mot. Summ. J. Countercl. 1.)  As a

result, when he argues that the debt must have been for personal purposes because the agreement

restricted the account to such use, Plaintiff is left in the precarious position of relying on

evidence he avers is inadmissible.

       More importantly, the terms of the agreement and the manner in which the card was

actually used are two separate issues.  In <u>Clark v. Brumbaugh & Quandahl, P.C., LLO</u>, 731 F.

Supp. 2d 915 (D. Neb. 2010), for example, the plaintiff testified that she used her commercial

credit card account for personal, family, or household purposes.  <u>Id.</u> at 921.  The court found that

"[a]lthough [the defendant] is correct in its contention that the Account was opened . . .

ostensibly for commercial purposes, the [proper] focus [is] on the nature of the debt that was

incurred, and not the purpose for which the Account was opened."  <u>Id.</u> at 922; <u>see</u> <u>also</u> <u>Bloom v.

I.C. Sys., Inc.</u>, 972 F.2d 1067, 1068 (9th Cir. 1992) (holding that "[n]either the lender's motives

nor the fashion in which the loan is memorialized" determine whether a transaction is a "debt"

under the FDCPA); <u>Moss v. Cavalry Invs., L.L.C.</u>, No. CIV.A.03-2653, 2004 WL 2106523, at *1

(N.D. Tex. Sept. 20, 2004) (citations omitted) ("The critical inquiry in determining whether a

'debt' relates to a personal or business obligation is the nature of the underlying transaction.");

<u>Perk v. Worden</u>, 475 F. Supp. 2d 565, 569 (E.D. Va. 2007) (noting that "courts have looked to

the substance of transactions to determine whether they fall under the ambit of consumer

protection statutes").  Therefore, even if the credit card agreement restricted the use of Plaintiff's

account to personal purposes, that fact does not establish that the card was actually used for such

purposes.

     The second case cited by Plaintiff is <u>Miller v. McCalla, Raymer, Padrick, Cobb, Nichols,

and Clark, L.L.C.</u>, 214 F.3d 872 (7th Cir. 2000).  (Pl.'s Sur Reply Def.'s Mot. Summ. J. Pl.'s

Claims 2-3.)  In <u>Miller</u>, the plaintiff took out a mortgage for a home in which he personally

resided.  <u>Id.</u> at 874.  Several years later, the plaintiff moved out of the house but kept it as a rental

property.  <u>Id.</u>  When he received a debt collection notice in connection with the mortgage and

sued under the FDCPA, the defendant argued that the mortgage did not constitute a "debt"

because at the time the collection notice was sent, the plaintiff was using the house for commercial purposes.  Id.  The Seventh Circuit disagreed, holding that in determining the nature of the debt, "the relevant time is when the loan is made, not when collection is attempted."  Id. The present case is easily distinguishable.  In Miller, the mortgage qualified as a debt under the FDCPA because there was evidence that it was used to purchase the plaintiff's personal residence.  In this case, Plaintiff has not introduced any evidence at all regarding the manner in which the credit card was used.

Finally, Plaintiff cites Moore v. Principal Credit Corp., No. CIV.A.96-338, 1998 WL 378387, at *2 (N.D. Miss. 1998), for the proposition that the FDCPA can apply to commercial debt when the debt collector targets an individual instead of a business.  (Pl.'s Sur Reply Def.'s Mot. Summ. J. Pl.'s Claims 3.)  In Moore, the court found that "[t]he fact that the plaintiffs were contacted in their home about payment of the debt suggests at the very least that the plaintiffs were ultimately responsible for the debt."  1998 WL 378387, at *2.  Therefore, "[i]f the plaintiffs were not 'consumers' at the time of purchase, then certainly they became 'consumers' for purposes of the [FDCPA] once the telephone calls to their home began."  Id.  This Court, however, respectfully disagrees with the idea that the nature of a debt can be transformed from commercial to personal by the manner in which it is collected.  Other courts that have considered the Moore opinion have come to similar conclusions.  See Slenk v. Transworld Sys., Inc., 236 F.3d 1072, 1076 (9th Cir. 2001) ("The logic in Moore is antithetical to the tenets of the FDCPA."); Holman v. W. Valley Collection Serv., Inc., 60 F. Supp. 2d 935, 937 (D. Minn. 1999) ("[I]f a communication to the debtor's home converted any commercial debt into an obligation under the FDCPA, it would be tantamount to an amendment of the clear intent of Congress.").

8

Therefore, Defendant's act of sending the debt collection notice to Plaintiff's personal residence, rather than to a business address, does not establish that the underlying debt arose from a personal transaction.

In sum, Plaintiff has failed to satisfy his burden of demonstrating that the money Defendant attempted to collect was a "debt" for purposes of the FDCPA. The fact that he personally cannot recall any details associated with the credit card account at issue does not absolve him of this burden. Even if Plaintiff believed he was incorrectly identified as the owner and user of the credit card account, he still could have sought discovery from Defendant regarding the substance of the transactions he allegedly made. Defendant's Motion for Summary Judgment on Plaintiff's FDCPA claims is therefore granted.

**B.      Defendant's Motion for Summary Judgment on its Counterclaims**

**1.      Choice of Law**

In support of its Motion for Summary Judgment on All Counterclaims, Defendant has introduced alleged credit card agreements for Accounts 09540 and 0174, which state that they are to be governed by the laws of Delaware. (Def.'s Mot. Summ. J. Countercl., Ex. B at 39 & Ex. F at 25.) Due to his dementia, Plaintiff does not recall entering into these credit card agreements and contends that they have not been properly authenticated. (Pl.'s Resp. Opp'n Def.'s Mot. Summ J. Countercl. 2, 4, 10.) According to Plaintiff, because the agreements are inadmissible, there is no evidence of a choice of law provision, and the Court must apply Pennsylvania law. (Id. at 7.) Furthermore, Plaintiff appears to argue that even if a choice of law issue exists, the Court should apply Pennsylvania law over Delaware law "to the extent that Pennsylvania's statutes and common law protect Pennsylvania citizens from abuse by those with superior

9

bargaining power . . . ."[3]  (Id. at 8-9.)  The Court now addresses Plaintiff's choice of law

argument.

        The Third Circuit has held that when "two jurisdictions' laws are the same, then there is

no conflict at all, and a choice of law analysis is unnecessary.  Thus, the first part of the choice of

law inquiry is best understood as determining if there is an actual or real conflict between the

potentially applicable laws."  Hammersmith v. TIG Ins. Co., 480 F.3d 220, 230 (3d Cir. 2007).

When no conflict exists, the district court "may refer interchangeably to the laws of the states

whose laws potentially apply."  Huber v. Taylor, 469 F.3d 67, 74 (3d Cir. 2006).

        In this case, with regard to Defendant's breach of contract claim, there is no conflict.  In

Pennsylvania, "the elements of a breach of contract claim include: (1) the existence of a contract,

including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant

damages."  Howe v. LC Philly, LLC, No. CIV.A.10-5495, 2011 WL 1465446, at *2 (E.D. Pa.

Apr. 15, 2011) (citing Gorski v. Smith, 812 A.2d 683, 692 (Pa. Super. Ct. 2002)).  In Delaware, a

plaintiff asserting a breach of contract claim must establish: "(1) the existence of an enforceable

contract, whether it be express or implied; (2) a breach of a contractual obligation; and (3)

resulting damages."  Prusky v. Allstate Life Ins. Co., No. CIV.A.09-05156, 2010 WL 3859787,

at *3 (E.D. Pa. Sept. 30, 2010) (citing VLIW Tech., LLC v. Hewlett-Packard Co., 840 A.2d 606,

612 (Del. 2003)).  Because the elements of a breach of contract claim are identical in both states

– and because neither party has identified any other law relevant to Defendant's counterclaim –

--------

        [3]  In making this argument, Plaintiff has not identified any potential conflicts between the
consumer protection laws of Pennsylvania and Delaware.  Furthermore, in light of the fact that
Plaintiff does not recall entering into any contracts, it is unclear how the issue of bargaining
power is relevant to this case.

the Court need not engage in a conflict of law analysis, and can refer to either Delaware or

Pennsylvania law in addressing Defendant's counterclaim.

### 2.    Breach of Contract

Defendant alleges that Plaintiff opened Account 09540 and Account 0174 with Bank of

America, that these accounts were assigned to Cavalry SPV I, LLC ("Cavalry SPV") on

September 29, 2009, and that Cavalry SPV in turn assigned the accounts to Defendant on

October 2, 2009.  (Def.'s Mot. Summ J. Countercl. 2-4.)  Defendant contends that, at the time it

acquired the accounts, Plaintiff owed $85,809.89 on Account 09540 and $12,019.75 on Account

0174.  (Id. at 2-3.)  In support of this claim, Defendant has introduced the following: (1) a July

2009 Bank of America credit card statement for Account 09540, (id., Ex. A); (2) January 2006

and August 2009 Bank of America credit card statements for Account 0174, (id., Ex. E); (3) a

Bill of Sale and Assignment of Loans from FIA Card Services, N.A. ("FIA"), a subsidiary of

Bank of America, to Cavalry SPV (id., Ex. C); (4) an Assignment of the FIA loans from Calvary

SPV to Defendant (id., Ex. D); (5) two credit card agreements, which Defendants states are the

contracts governing these Accounts, (id., Exs. B & F); and (6) an affidavit from Donald E.

Strauch, Executive Vice President of Cavalry SPV, in which Mr. Strauch avers that Cavalry SPV

purchased Accounts 09540 and 0174 from Bank of America on September 29, 2009, that Bank of

America transferred to Cavalry SPV the aforementioned credit card statements and credit card

agreements, and that both Accounts were assigned to Defendant on October 2, 2009.  (Id., Ex. G

("Strauch Aff.").)  Attached to Mr. Strauch's affidavit is an Affidavit of Sale of Accounts by

Original Creditor from Debra L. Pellicciaro – FIA's Assistant Vice President and a custodian of

its books and records – who confirms that FIA "sold a pool of charged-off accounts" and

transferred the records associated with those accounts to Cavalry SPV on September 29, 2009.

(Strauch Aff., Ex. 6 ("Pellicciaro Aff. Sale").)    Defendant argues that Plaintiff breached his

contracts for Accounts 09540 and 0174 by failing to pay the outstanding balances in accordance

with the terms of the credit card agreements.[4]   (Def.'s Mot. Summ. J. Countercl. 11-12.)

In his Response in Opposition, Plaintiff argues that Defendant has failed to establish the

existence of valid contracts for Accounts 09540 and 0174.   (Pl.'s Resp. Opp'n Def.'s Countercl.

9.)   He contends that the credit card agreements submitted by Defendant are hearsay and do not

satisfy Federal Rules of Evidence 1002 and 1003 – which require an original or a duplicate of a

writing to prove the writing's content – because the agreements do not identify Plaintiff by name

and are not signed or dated.   (Id. at 9-10.)   In essence, Plaintiff's sole defense against Defendant's

counterclaim for breach of contract rests on his contention that Defendant has not laid a proper

foundation to authenticate the credit card statements and agreements.   (Id. at 9-11.)

The Court disagrees and finds that Defendant has met its burden of authenticating its

evidence.   To begin with, Ms. Pellicciaro, a custodian of FIA's records, avers that on September

29, 2009, FIA "sold a pool of charged-off accounts (the Accounts) by a Credit Card Account

Purchase Agreement and a Bill of Sale to Cavalry SPV I, LLC.   As part of the sale of the

Accounts, electronic records and other records were transferred on individual Accounts to the

debt buyer." (Pellicciaro Aff. Sale.)   The Loan Schedule attached to the Bill of Sale and

Assignment of Loans confirms that Accounts 09540 and 0174 were included in the sale.   (Def.'s

---

[4]   The credit card agreements state that the cardholder promises "to pay to us [Bank of America] the amounts of all credit you obtain, which includes all Purchases and Cash Advances. You also promise to pay us all the amounts of finance charges, fees, and any other transactions we charge to your account."   (Def.'s Mot. Summ. J. Countercl., Ex. B at 31; id. Ex. F at 18.)

Mot. Summ J. Countercl., Ex. C.)  Ms. Pellicciaro states that the records associated with these

Accounts were kept in the ordinary course of business, (Pellicciaro Aff. Sale), and the Court

finds that this testimony shields the documents from any hearsay objection.  See FED. R. EVID.

803(6) (excepting from the definition of hearsay reports and records "kept in the course of a

regularly conducted business activity . . . as shown by the testimony of the custodian or other

qualified witness").[5]

Next, Mr. Strauch attests that the credit card statements and agreements at issue in this

case were among the records Cavalry SPV received when it purchased Accounts 09540 and 0174

---

[5]  Defendant has also attached to its Amended Reply Brief two additional affidavits from
Ms. Pellicciaro.  In these affidavits, Ms. Pellicciaro attests that the original contracts in this
matter are no longer accessible.  (Def.'s Am. Reply Mot. Summ. J. Countercl., Exs. A
("Pellicciaro Aff. 09540") & B ("Pellicciaro Aff. 0174").)  Despite the absence of the originals,
Ms. Pellicciaro avers that records kept in the ordinary course of FIA's business demonstrate that
Plaintiff opened Account 09540 on November 3, 2007, that the sum of $85,809.89 was due and
payable on this Account as of July 31, 2009, and that the Account – including the card member
agreement – was transferred to Cavalry SPV.  (Pellicciaro Aff. 09540 ¶ 5(a)-(c).)  Ms. Pellicciaro
further attests that Account 0174 was opened by Plaintiff on June 18, 2001, that $12,058.75
became due and payable on the Account on August 31, 2009, and that this Account – again,
including the card member agreement – was also transferred to Cavalry SPV.  (Pellicciaro Aff.
0174 ¶ 5(a)-(c).)
      Plaintiff argues that Ms. Pellicciaro's affidavits "reflect a lack of knowledge regarding the
whereabouts of the contracts . . . and fail to set forth any information regarding the terms or
provisions of the contracts that were allegedly breached . . . ."  (Pl.'s Sur Reply Def.'s Mot.
Summ. J. Countercl. 2.)  Nevertheless, the fact that Ms. Pellicciaro cannot obtain the original
contracts does not mean that the information contained in her affidavits is inadmissible.  Federal
Rule of Evidence 1004 states that an original is not required, "and other evidence of the contents
of a writing . . . is admissible" if the original has been lost, destroyed or is unobtainable.  FED. R.
EVID. 1004(1), (2).  Ms. Pellicciaro avers that the original contracts are inaccessible in this case
and bases her testimony on the records of Plaintiff's Accounts, which were kept in the ordinary
course of business.  (Pellicciaro Aff. 09540 ¶¶ 3-5; Pellicciaro Aff. 0174 ¶¶ 3-5.)  The Court also
rejects Plaintiff's argument that Ms. Pellicciaro failed to set forth the terms of the contract that
were breached.  The affidavits state that Plaintiff defaulted on Accounts 09540 and 0174
pursuant to the terms of the card member agreements, which were transferred to Cavalry SPV
when it purchased the Accounts.  (Pellicciaro Aff. 09540 ¶ 5(b)-(c); Pellicciaro Aff. 0174 ¶ 5(b)-
(c).)

from Bank of America/FIA.  (Strauch Aff. ¶¶ 7-11.)  Finally, Defendant states that it came into possession of the credit card statements and agreements when Accounts 09540 and 0174 were assigned to it by Cavalry SPV on October 2, 2009.  (Def.'s Mot. Summ J. Countercl. 2-4.)  This evidence establishes a chain of custody from Bank of America/FIA – which originated Accounts 09540 and 0174 – to Defendant, which currently holds the rights to the Accounts, and satisfies Defendant's burden of authenticating the credit card statements and agreements.

The Court finds that, under either Pennsylvania or Delaware law, Defendant has set forth the elements of a breach of contract claim.  First, the credit card statements – which identify Plaintiff by name and address – and credit card agreements have been adequately authenticated and are evidence that a contract existed between Plaintiff and Bank of America/FIA.  Second, the July 2009 statement for Account 09540, the August 2009 statement for Account 0174, the Loan Schedule attached to the Bill of Sale and Assignment of Loans, and the affidavits of Debra Pellicciaro are evidence that Plaintiff breached the contract by failing to pay $85,809.89 on Account 09540 and $12,019.75 on Account 0714.  Finally, Defendant suffered damages in the form of the unpaid debt.

Plaintiff has not introduced any evidence to challenge the documents and affidavits submitted by Defendant.  If Plaintiff doubted the legitimacy of the credit card agreements, the billing statements, or the amounts allegedly owed, he could have requested the production of relevant documents, deposed witnesses, or gathered other evidence during the discovery period – which was extended twice in this case – to support his argument.  Instead, it does not appear that Plaintiff conducted any discovery at all with regard to Defendant's counterclaims for breach of contract.  Furthermore, not only has Plaintiff failed to introduce any of his own evidence, he does

not actually deny any of Defendant's allegations.  In his affidavit, he merely states that, due to his

dementia, he does not recall whether or not he executed the agreements or incurred the debts at

issue.  (Pl.'s Resp. Opp'n Def.'s Mot. Summ. J. Countercl., Ex. C.)  An inability to remember

does not create a genuine issue of material fact, and the Court therefore finds that no reasonable

jury could find in favor of Plaintiff.[6]  Defendant's Motion for Summary Judgment on its

Counterclaim for breach of contract is granted.

### 3.    Unjust Enrichment

In the event that this Court found there were no contracts in this case, Defendant argues

that it would still be entitled to recover the outstanding debt on Accounts 09540 and 0174

because Plaintiff was unjustly enriched by the credit he obtained on these Accounts.  (Def.'s Mot.

Summ. J. Countercl. 13-16.)  Because the Court finds in favor of Defendant on its breach of

contract claim, Defendant's Motion for Summary Judgment on its unjust enrichment claim is

denied as moot.

### 4.    Damages

In its Motion for Summary Judgment, Defendant makes passing references to the fact that

interest has accrued on Accounts 09540 and 0174.  (See Def.'s Mot. Summ. J. Countercl. 2 n.2;

---

[6] A similar factual scenario was recently confronted by the Middle District of
Pennsylvania.  In Eaton v. Citibank (South Dakota), N.A., No. CIV.A.09-414, 2010 WL
4272920, at *5 (M.D. Pa. Oct. 25, 2010), the plaintiff denied the authenticity of a credit card
agreement, which the defendant asserted governed the terms of her account.  Id.  The defendant
provided an affidavit from an officer at Citicorp Credit Services, who averred that the agreement
covered the account.  Id.  The plaintiff did not rebut the evidence, but merely argued that her
denial created an issue of fact for trial.  Id.  The court disagreed and granted summary judgment
to the defendant, concluding that the plaintiff had "presented no evidence other than her '"bare
assertions, conclusory allegations or [suspicions]'" to counter defendant's evidence."  Id.
(quoting Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)).

id. at 3 n.5.)  Defendant also argues that it is entitled to reasonable attorneys' fees and costs

associated with this litigation.  (Id. at 16.)  Defendant has not, however, provided the Court with

a precise calculation of the amount it seeks.  Plaintiff merely states that he disputes the amounts

owed.  (Pl.'s Sur Reply Def.'s Mot. Summ. J. Countercl. 2-3.)  The parties are therefore directed

to submit further briefing on the issue of damages.

## IV.     CONCLUSION

For all of the foregoing reasons, the Court finds that Plaintiff has failed to demonstrate

that the money Defendant attempted to collect from him was used in transactions primarily for

personal, family, or household purposes.  As such, there is no evidence that the money owed was

a "debt" for purposes of the FDCPA, and Defendant's Motion for Summary Judgment on

Plaintiff's Claims is granted.  With respect to Defendant's Motion for Summary Judgment as to

All Counterclaims, Plaintiff has failed to raise a genuine question of material fact regarding

Defendant's evidence that he breached his contracts for Accounts 09540 and 0174.  The Motion

on Defendant's breach of contract claim is therefore granted and the Motion on its unjust

enrichment claim is denied as moot.  The parties are directed to submit further briefing on the

issue of damages.

An appropriate Order follows.