### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. MURRAY H. KIMMEL, | : | CIVIL ACTION |
| | : | |
| Plaintiff/Counterclaim Defendant, | : | |
| | : | |
| v. | : | |
| | : | |
| CAVALRY PORTFOLIO SERVICES, LLC, | : | NO.  10-680 |
| | : | |
| Defendant/Counterclaim Plaintiff. | : | |

### MEMORANDUM

BUCKWALTER, S. J.                                                                                July 27, 2011

Plaintiff Dr. Murray H. Kimmel ("Plaintiff") has filed the present Motion for Reconsideration of the Court's May 25, 2011 Order granting Defendant Cavalry Portfolio Services, LLC's ("Defendant") Motion for Summary Judgment on Plaintiff's Claims.  For the following reasons, the Motion is granted.

## I.    FACTUAL AND PROCEDURAL HISTORY

According to the Complaint, Defendant sent to Plaintiff correspondence dated December 8, 2009, in which Defendant offered Plaintiff an opportunity to settle an alleged Bank of America credit card debt of $12,479.32.  (Compl. ¶¶ 13-23.)  Defendant asserts that it acquired the rights to the debt from Bank of America on October 2, 2009.  (Am. Countercl. ¶¶ 26-32).  Plaintiff claims that Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq*. ("FDCPA") in attempting to collect on this debt by:  (1) using false, deceptive, or misleading representations or means in connection with the collection of a debt, in violation of 15 U.S.C. §1692e; (2) using false representation or deceptive means to collect or attempt to collect a debt,

in violation of 15 U.S.C. § 1692e(10); (3) acting in an otherwise unfair and unconscionable manner to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692f; and (4) failing to provide, within five days after its initial written communication with Plaintiff, written notice containing information on Plaintiff's right to dispute the debt, request validation, or request the name of the original creditor, in violation of 15 U.S.C. § 1692g(a).  (Compl. ¶ 27.)

Defendant filed an Amended Counterclaim on April 8, 2010 alleging breach of contract and unjust enrichment based on Plaintiff's failure to pay $12,019.75 owed on the credit card account cited in the Complaint ("Account 0174"), as well as a separate debt of $85,809.89 from another credit card account that was not referenced in the Complaint ("Account 09540").  (Am. Countercl. ¶¶ 7-57.)  Plaintiff filed a Motion to Dismiss Defendant's Counterclaim on April 20, 2010, which this Court denied on September 29, 2010.  See Kimmel v. Cavalry Portfolio Servs., LLC, 747 F. Supp. 2d 427 (E.D. Pa. 2010).  Defendant filed two separate Motions for Summary Judgment on September 13, 2010, which were denied without prejudice by this Court after the parties stipulated to an extension of the discovery deadline on October 5, 2010.  On February 7, 2011, Defendant again filed Motions for Summary Judgment on Plaintiff's claims and its own Counterclaim, and the Court granted both Motions on May 25, 2011.  See Kimmel v. Cavalry Portfolio Servs., LLC, No. CIV.A.10-680, 2011 WL 2039049 (E.D. Pa. May 25, 2011).  Shortly thereafter, on June 3, 2011, Plaintiff filed the present Motion for Reconsideration.  Defendant filed a Response in Opposition on June 17, 2011, Plaintiff filed a Reply Brief on July 1, 2011, and Defendant filed a Motion for Leave to File a Sur-Reply Brief on July 7, 2011.

## II.    STANDARD OF REVIEW

A party may move to alter or amend a judgment pursuant to Federal Rule of Civil

Procedure 59(e).  FED. R. CIV. P. 59(e); see also E.D. PA. CIV. R. 7.1(g) ("Motions for

reconsideration or reargument shall be served and filed within fourteen (14) days after the entry

of the judgment, order, or decree concerned.").  A party moving for reconsideration of a court's

decision must demonstrate "at least one of the following grounds: (1) an intervening change in

the controlling law; (2) the availability of new evidence that was not available when the court

granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact

or to prevent manifest injustice."  Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176

F.3d 669, 677 (3d Cir. 1999) (citing N. River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218

(3d Cir. 1995)).  "Because of the courts' interest in the finality of judgments, motions for

reconsideration should be granted sparingly."  Tomasso v. Boeing Co., No. CIV.A.03-4220, 2007

WL 2458557, at *2 (E.D. Pa. Aug. 24, 2007) (citing United States v. Bullock, No. CIV.A.98-

5023, 2005 WL 352854, at *1 (E.D. Pa. Jan. 24, 2005)).

## III.   DISCUSSION

### A.    Motion for Reconsideration

Under the FDCPA, "debt" is defined as "any obligation or alleged obligation of a

consumer to pay money arising out of a transaction in which the money, property, insurance, or

services which are the subject of the transaction are primarily for personal, family, or household

purposes, whether or not such obligation has been reduced to judgment."  15 U.S.C. § 1692a(5).

On May 25, 2011, this Court granted Defendant's Motion for Summary Judgment on Plaintiff's

FDCPA claims because it found that Plaintiff failed to demonstrate that the money Defendant

sought to collect derived from a debt that was for personal, family, or household purposes.  See

Kimmel, 2011 WL 2039049, at *2-5.  Plaintiff now asks the Court to reconsider this decision

3

based primarily on the fact that, in response to Plaintiff's Request for Admissions, Defendant admitted that it was a "debt collector" and that Plaintiff was a "consumer" within the meaning of the FDCPA.  (Pl.'s Mot. Recons. 4-7.)[1]  This evidence was available before the Court decided Defendant's Motion for Summary Judgment, but was not brought to the Court's attention until this time.

In response, Defendant contends that even though it admitted it was a debt collector and Plaintiff was a consumer under the FDCPA, it never actually conceded that the money Plaintiff owed satisfied the statute's definition of "debt."  (Def.'s Resp. Opp'n 5-8.)  Defendant also argues that there are no errors of law or fact, that there would be no manifest injustice in denying Plaintiff's Motion, and that Plaintiff's failure to present this additional evidence previously is not the result of any excusable neglect.  (Id. at 11-14.)

In most circumstances, a motion for reconsideration is denied when it is based solely on evidence that was available at the time of summary judgment.  See Bailey v. United Airlines, 279 F.3d 194, 201 (3d Cir. 2002) ("A district court may properly refuse to consider evidence presented in a motion for reconsideration when the evidence was available prior to summary judgment.") (citing Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)).  Here, it is not entirely clear why Plaintiff did not include Defendant's answers to his Request for Admissions

---

[1] Plaintiff also raises two additional arguments: (1) Defendant's collection notes identify Plaintiff's account as a "personal account;" and (2) the Servicing and Managing Agreement between Cavalry SPV I, LLC ("Cavalry SPV") and Defendant refers to the fact that Cavalry SPV acquires "consumer accounts" and maintains "consumer information."  (Pl.'s Mot. Recons. 7-8.) Because Defendant's answers to Plaintiff's Request for Admissions provide the Court with adequate grounds to grant the Motion for Reconsideration, the Court declines to address these arguments.

when responding to the Motion for Summary Judgment.[2]  Nevertheless, because the omission

appears to have been a mere mistake – and because a motion for reconsideration may be granted

even when the evidence was previously available in order to prevent manifest injustice – the

Court will consider Plaintiff's Motion on the merits.

The FDCPA defines "debt collector" as "any person who uses any instrumentality of

interstate commerce or the mails in any business the principal purpose of which is the collection

of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or

due or asserted to be owed or due another."  15 U.S.C.A. § 1692a(6).  A "consumer" is defined

as "any natural person obligated or allegedly obligated to pay any debt."  15 U.S.C.A. §

1692a(4).  As noted above, Defendant admitted that it was a debt collector and Plaintiff was a

consumer within the meaning of the FDCPA.  In making these admissions, however, Defendant

denies conceding that the money Plaintiff owed met the definition of "debt" as set forth in the

FDCPA.  (Def.'s Resp. Opp'n 6-7.)  Rather, Defendant has interpreted the terms "consumer,"

"debt collector," and "debt" to have separate, distinct meanings, so that "Cavalry can be a debt

collector, and Plaintiff can be a consumer, all while Plaintiff's account is not a debt for purposes

---

[2]  Plaintiff explains his failure to include the responses to the Request for Admissions as
follows:

> When Plaintiff filed [his] Sur-Reply to Defendant's Reply Brief, Plaintiff had reviewed
> Defendant's Responses to Plaintiff's Discovery Responses and believed that the
> restrictions for the credit account set forth in the cardmember agreement and billing
> statements addressed to Plaintiff at his personal residence were sufficient evidence that
> the debt was a personal debt.  Moreover, Plaintiff relied upon the admissions being
> conclusive, only realizing now that the Court was clearly unaware of the admission
> responses and that this information was relevant to the Court's determination on whether
> Plaintiff has a claim under the FDCPA.

(Pl.'s Mot. Recons. 4 n.1.)

of the FDCPA."  (Id. at 8; see also Def.'s Mot. Leave File Sur-Reply Br., Ex. A.)

The Court is unpersuaded.  If the definitions contained in the FDCPA are unrelated, as Defendant suggests, then the reference to "debt" in the definitions of  "debt collector" and "consumer" could be read to include *all* debts, even those obtained for commercial purposes or are otherwise beyond the scope of the FDCPA.  As the Supreme Court has held, however, "[i]t is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'"  Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000) (quoting Davis v. Michigan Dept. of Treasury, 489 U.S. 803, 809 (1989)).  Therefore, when the FDCPA states that a debt collector is someone who engages in "the collection of any debts" and a consumer is a person obligated to "pay any debt," it is referring to "debt" as defined in the statute itself, i.e. one that is obtained for personal, family, or household purposes.  Any other interpretation would not make sense in the context of the FDCPA's plain language and purpose.[3]  As such, the Court finds that when Defendant admitted that it was a "debt collector" and that Plaintiff was a "consumer" for purposes of the FDCPA, it admitted that the debt at issue in this case fell within the meaning of the statute as well.

In light of this finding, the Court's original basis for granting summary judgment is no longer tenable, and it would be manifestly unjust to deny Plaintiff the opportunity to pursue his claims.  The Motion for Reconsideration is therefore granted, and the Court vacates its prior Order granting summary judgment to Defendant on Plaintiff's claims.

---

[3]  Under Defendant's interpretation, the recipient of a business loan would qualify as a "consumer" under the FDCPA, but would not be able to bring a claim under the statute because he or she did not borrow money for personal, family, or household purposes.

**B.      The Merits of Plaintiff's FDCPA Claims**

In its Motion for Summary Judgment, Defendant challenged the merits of each individual claim made by Plaintiff under the FDCPA.  Because the Court found Plaintiff did not meet the threshold requirement of demonstrating that his alleged "debt" qualified under the FDCPA, it did not address these arguments.  Now that the Court is vacating its previous Order, these issues are ripe for consideration.

**1.      Plaintiff's Claim Under 15 U.S.C. § 1692g(a)**

15 U.S.C. § 1692g states that, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt," a debt collector must send to the consumer written notice containing the following:

> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).  Under federal common law,[4] "the 'mailbox rule' . . . 'provides that the proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee in the usual time.'"  Hoefs v. CACV of Colo., LLC, 365 F. Supp.

---

[4]  Because Plaintiff's claims arise under federal law and involve no issues of state law, the question of whether Defendant has created a presumption that it mailed a letter on October 1, 2009 is governed by federal common law.

2d 69, 72-73 (D. Mass. 2005) (quoting <u>Schikore v. BankAmerica Supplemental Ret. Plan</u>, 269 F.3d 956, 961 (9th Cir. 2001)).  "Defendants need not prove actual receipt of the [mailed document]; rather, proof of receipt 'may be accomplished by presenting circumstantial evidence, including evidence of customary mailing practices used in the sender's business.'"  <u>Robertson v. J.C. Penney Co., Inc.</u>, 484 F. Supp. 2d 561, 565 (S.D. Miss. 2007) (quoting <u>Marsh v. First USA Bank, N.A.</u>, 103 F. Supp. 2d 909, 918 (N.D. Tex. 2000)).  Furthermore, "the affiant in support of the mailing need not have personal knowledge of the letter's mailing, but 'at a minimum the affiant must have personal knowledge of the procedures in place at the time of mailing.'"  <u>Id.</u> (quoting <u>Burton v. Banta Global Turnkey Ltd.</u>, 170 Fed. Appx. 918, 924 (5th Cir. 2006)).

Here, Plaintiff contends that Defendant did not provide him with written notice of his rights pursuant to 15 U.S.C. § 1692g(a) within five days of sending its December 8, 2009 debt settlement letter.  (Compl. ¶ 16.)  As a result, Plaintiff argues, he was not aware that he could dispute or request validation of the debt.  (Id. ¶ 17.)  Defendant responds that, before its December 8, 2009 communication, it had sent a letter on October 1, 2009, which notified Plaintiff of his rights and conformed with the requirements of 15 U.S.C. § 1692g(a).  (Def.'s Mot. Summ. J. Pl.'s Claims 6-7.)  Defendant has introduced a copy of this letter, (id., Ex. A), as well as an affidavit from Walter F. Pawul, Jr., Executive Vice President of PCI Group, Inc., the company which prints and mails Defendant's collection letters.  (Id., Ex. B.)  Mr. Pawul certifies that "a letter was mailed to [Plaintiff's address] on October 1, 2009 and December 8, 2009, via the United States Post Office.  The letters were mailed using first class postage.  Neither of these letters were returned as undeliverable."  (Id., Ex. B.)  Plaintiff denies ever having received the October 1, 2009 letter.  (Pl.'s Resp. Opp'n 19.)

8

The Court finds that the evidence submitted by Defendant is insufficient to create a presumption that the October 1, 2009 letter was sent to Plaintiff.  Mr. Pawul's affidavit merely states that "a letter" was mailed to Plaintiff on October 1, 2009 and December 8, 2009.  From this language, it is not clear that Mr. Pawul has personal knowledge of the mailing procedures that were in place at the time the October 1, 2009 letter was allegedly mailed.  In addition, there are no affidavits or other testimony from any of Defendant's own employees regarding how and when the October 1, 2009 letter was submitted to PCI Group, Inc. for printing and mailing. Because Defendant has failed to provide adequate evidence concerning its customary mailing practices, an issue of fact exists as to whether the October 1, 2009 letter was mailed to Plaintiff. The Motion for Summary Judgment on Plaintiff's 15 U.S.C. § 1692g(a) claim is denied.

### 2.       Plaintiff's Claim Under 15 U.S.C. § 1692e

The FDCPA states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  The Third Circuit has held that "[a] debt collection letter is deceptive where 'it can be reasonably read to have two or more different meanings, one of which is inaccurate.'"  Brown v. Card Serv. Ctr., 464 F.3d 450, 455 (3d Cir. 2006) (quoting Wilson v. Quadramed Corp., 225 F.3d 350, 354 (3d Cir. 2000)).  Because "'the FDCPA protects all consumers, the gullible as well as the shrewd,'" id. at 453 (quoting Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993)), FDCPA claims "should be analyzed from the perspective of the least sophisticated debtor."  Id. at 453-54.  This standard helps protect "naive consumers," but "'it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.'"  Id. at 454 (quoting

Quadramed, 225 F.3d at 354-55).  Whether a communication "meets the 'least sophisticated debtor' standard is a question of law."  Jarzyna v. Home Props., L.P., 763 F. Supp. 2d 742, 748 (E.D. Pa. 2011) (citing Quadramed , 225 F.3d at 353 n.2).

Here, Plaintiff claims that Defendant used false, deceptive, or misleading representations in its letter dated December 8, 2009.  (Compl. ¶ 27(a).)  Defendant moves for summary judgment on this claim, arguing that even "[t]he least sophisticated debtor would understand the letter to mean that he/she owed a certain amount of money [i.e. the outstanding balance] and that they could pay off the account by choosing either a 30% or 20% discount on the account."  (Def.'s Mot. Summ. J. Pl.'s Claims 9.)  In other words, the letter could reasonably be read only one way, and any contrary interpretation would be bizarre or idiosyncratic.  (Id. at 10.)

In response, Plaintiff contends that the letter is misleading for several reasons.  First, he argues that the letter is confusing because it "fails to identify who Cavalry Portfolio Services, LLC is and what relation it has to 'Original Institution: Bank of America/FIA Card Services, N.A.'"  (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. Pl.'s Claims 11.)  Plaintiff does not cite any authority in support of this argument, but he is presumably referring to 15 U.S.C. § 1692e(11), which requires all communications with the consumer to disclose that the document is from a debt collector.  15 U.S.C. § 1692e(11).  In this case, the December 8, 2009 letter unambiguously states, "This is an attempt to collect a debt," and the identification of Bank of America as the original institution – combined with the original account number and outstanding balance – indicates the source of the debt.  (Compl., Ex. A.)  There is no doubt that the letter is a communication from a debt collector, and the Court finds no violation of § 1692e(11).

Next, Plaintiff argues that the letter fails to set forth any rights he has under the FDCPA

or Pennsylvania law.  (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. Pl.'s Claims 12.)  Defendant's

duty to disclose Plaintiff's rights under the FDCPA, however, is governed by 1692g(a), not

1692e.  Furthermore, Plaintiff has not cited to any law indicating Defendant had a duty to inform

Plaintiff of Pennsylvania laws that applied to him.  Indeed, Plaintiff has not cited to any

Pennsylvania laws relevant to his FDCPA claim.

      Plaintiff also argues that the letter is confusing because it does not explain the difference

between the two settlement amounts, provide payment due dates, or indicate the mode of

acceptance.  (Id. at 12-13.)[5]  Plaintiff further notes that, despite the fact that the body of the letter

offers two settlement amounts, the attached payment coupon lists only the 30% discount option.

(Id. at 12.)  The Court rejects these arguments, because even the least sophisticated consumer

would understand the options presented.  The letter states that the debtor could either pay a one-

time lump sum of $8,735.52 or five separate monthly payments of $1,996.69 (a total of

$9,983.45).  (Compl., Ex. A.)  The advantage is obvious: the consumer could pay a smaller sum

immediately – thereby saving money – or pay a larger sum, but have the benefit of additional

time in which to pay.  With respect to payment dates, the letter states: "This offer expires thirty

days from the date of this letter."  (Id.)  It is clear that Plaintiff had thirty days to pay $8,735.52 in

order to accept the 30% discount or submit the first installment of $1,996.69 to accept the 20%

discount.  With regard to the mode of acceptance, the letter provides the address of a website to

make online payments and includes a detachable coupon that would allow Plaintiff to mail his

payment.  (Id.)  Admittedly, it is odd that the payment coupon does not mention the 20%

---

[5]  In addition, Plaintiff argues that the letter was false or misleading because it stated that
Defendant was not obligated to renew the offer.  (Id. at 13.)  Plaintiff, however, has not
introduced any evidence to demonstrate that Defendant did in fact have such an obligation.

discount, but the Court finds that this omission does not rise to the level of being false or deceptive under the FDCPA.  The coupon does not state that Plaintiff may not accept the 20% offer – which would have been deceptive – it merely does not reference it.  Furthermore, even if Plaintiff was confused by the offers, the letter makes explicit reference to several resources to assist him.  First, as noted above, the letter includes the address of a website which would have allowed Plaintiff to make payments or "check account information."  (Id.)  Second, the document states, "[i]f these offers don't fit into your current budget, please call us at (888) [phone number] and we will work with you to tailor a solution that falls within your finances."  (Id.)  Third, on the second page of the letter, another 800 number is listed "[f]or account questions, comments, or general customer service."  (Id.)  Finally, the letter states that "[i]f you have any reason to believe that our record of your Private Information is incorrect, contact us in writing at [Defendant's address].  We will investigate the situation and, when appropriate, update our records accordingly."  (Id.)

Next, Plaintiff contends that Defendant misled him about the amount he owed.  In support of this argument, he relies on Dragon v. I.C. Sys., Inc., 483 F. Supp. 2d 198 (D. Conn. 2007).  (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. Pl.'s Claims 13.)  In Dragon, the plaintiff claimed that the defendant debt collector violated §§ 1692e and 1692g by demanding the full outstanding balance without disclosing that the amount owed was subject to per diem increases. Id. at 201-02.  The court agreed, finding that

> not only did the collection notice not specifically indicate the date as of which the "BALANCE DUE" amount was the full amount of the debt, it also was potentially misleading for the "least sophisticated consumer" who could readily conclude that the total amount stated as due ($136.64) was due *at any time*, when in fact it was not and was subject to adjustment by [the creditor] on a periodic basis.

Id. at 203.  This case is easily distinguishable.  In Dragon, the defendant was seeking the full

balance due.  The court was concerned that interest and late fees could accrue on the account

between the time the plaintiff received the letter and the time she attempted to pay the

outstanding balance.  The letter was deceptive because the plaintiff could have been liable for

more than the $136.64 that the defendant stated she owed.  In this case, Defendant was not

seeking the full outstanding balance of $12,479.32.  Rather, Defendant's letter offered Plaintiff

the opportunity to pay a percentage of the outstanding balance as a way to satisfy the debt

entirely.  If the offer of a 30% or 20% discount was accepted within thirty days, there was no risk

that Plaintiff would be liable for additional accrued interest.  As such, Dragon is inapposite, and

Plaintiff has failed to demonstrate that there was anything deceptive about the amount Defendant

stated he owed.

For all of the reasons discussed above, Defendant's Motion for Summary Judgment on

Plaintiff's claim under 15 U.S.C. § 1692e is granted.

### 3.    Plaintiff's Claim Under 15 U.S.C. § 1692e(10)

Defendant also moves for summary judgment on Plaintiff's claim under 15 U.S.C. §

1692e(10).  (Def.'s Mot. Summ. J. Pl.'s Claims 7-14.)  Section 1692e(10) prohibits "[t]he use of

any false representation or deceptive means to collect or attempt to collect any debt or to obtain

information concerning a consumer."  15 U.S.C. § 1692e(10).  Plaintiff first contends that

Defendant violated § 1692e(10) by failing to describe the difference between the two settlement

offers presented in the December 8, 2009 letter.  (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. Pl.'s

Claims 14.)  This is the exact same allegation Plaintiff made in connection with his claim that

Defendant violated § 1692e generally, and the Court rejects it as duplicative.

13

Next, Plaintiff argues that Defendant was deceptive in saying that the payment would help him get back on the road to financial recovery, because this statement "implied that Defendant was concerned about Plaintiff's financial situation and had the ability to improve it," while Defendant's real motive was to collect a debt.  (<u>Id</u>. at 14.)  The Court disagrees.  It is clear that Defendant's comments about improving Plaintiff's financial situation merely underscored the fact that if Plaintiff accepted Defendant's settlement offer, the debt associated with his Bank of America account would be eliminated.  There is nothing deceptive about this statement.

Third, Plaintiff argues that Defendant violated the FDCPA by misrepresenting the scope of its settlement authority.  (<u>Id</u>. at 15.)  Although Plaintiff had ample opportunity during the discovery process to request information from Defendant regarding this claim, he has not submitted any evidence to support it.  Rather, he merely suggests that *if* Defendant was given authority to offer a discount beyond the thirty days listed on the December 8, 2009 letter, then Defendant misled Plaintiff in violation of 1692e(10).  (<u>Id</u>. at 16.)  This is pure speculation, and the Court rejects this argument.  Defendant's Motion for Summary Judgment on Plaintiff's 15 U.S.C. § 1692e(10) claim is granted.

### 4.      Plaintiff's Claim Under 15 U.S.C. § 1692f

Finally, Defendant moves for summary judgment on Plaintiff's claim under 15 U.S.C. § 1692f.  (Def.'s Mot. Summ. J. Pl.'s Claims 14.)  Section 1692f states that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  Plaintiff first argues that Defendant violated this provision by failing to set forth his rights under the FDCPA.  (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. Pl.'s Claims 17.)  The Court rejects this allegation as duplicative of Plaintiff's claim under § 1692g(a).  Plaintiff also contends that

Defendant used unfair or unconscionable tactics when it told him that its settlement offer would help him get back on the road to financial recovery. (Id. at 18.) The Court already addressed this argument in connection with Plaintiff's § 1692e(10) claim, and finds it unpersuasive for the same reasons. Finally, Plaintiff argues that Defendant violated § 1692f when it failed to notify him of the tax consequences associated with debt cancellation. (Id.) Plaintiff points to no authority indicating Defendant had an obligation to inform him of such tax implications, and the Court finds no reason to conclude that this omission was unfair or unconscionable. Defendant's Motion for Summary Judgment on Plaintiff's 15 U.S.C. § 1692f claim is granted.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court finds that Defendant admitted that Plaintiff's debt in this case qualifies under the FDCPA and, in light of this admission, it would be manifestly unjust to deny Plaintiff the opportunity to litigate his claims. Plaintiff's Motion for Reconsideration is therefore granted, and the portion of the Court's May 25, 2011 Order entering judgment in favor of Defendant on Plaintiff's claims is vacated. The Court further finds that while Plaintiff has failed to show that Defendant used false, deceptive, or unconscionable means to collect its debt, there is an issue of fact as to whether Defendant sent Plaintiff a letter on October 1, 2009 that complied with the requirements of 15 U.S.C. § 1692g(a). As such, Defendant's Motion for Summary Judgment on Plaintiff's claims under 15 U.S.C. §§ 1692e, 1692e(10), and 1692f is granted, but is denied with respect to Plaintiff's claim under 15 U.S.C. § 1692g(a). The parties are directed to attend a scheduling conference in preparation for trial.

An appropriate Order follows.